**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

ROBERT WILLIAM
MONTGOMERY,

      Defendant - Appellee.

No. 04-4193

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:03-CR-801-01-TS)**

---

Submitted on the briefs:

Wayne T. Dance, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the briefs), Salt Lake City, Utah, for Plaintiff - Appellant.

D. Bruce Oliver, D. Bruce Oliver, L.L.C., Salt Lake City, Utah, for Defendant - Appellee.

---

Before **KELLY, O'BRIEN** and **TYMKOVICH**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

Robert William Montgomery was charged in a one-count indictment with possession of three firearms and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The charges arose from an investigation into his wife's suicide. Montgomery pled guilty to the charge. The revised presentence report (PSR) calculated the total offense level as 19[1] and Montgomery's criminal history category as IV, resulting in a guideline range of 46 to 57 months. The United States moved for a four level upward departure under USSG §5K2.1 because the death of Montgomery's wife resulted from his unlawful possession of firearms. After a hearing, the district court found Montgomery contributed to his wife's suicide by "engag[ing] in a pattern of escalating violence toward [her], culminating in an incident just hours before her suicide," threatening to take the couple's son away from her and "thwart[ing] [her] efforts to receive treatment for her apparent depression . . . ." (Appellant's App. Vol. I at 81-82.) Consequently, on June 22, 2004, the district court granted the government's motion and imposed a two-level upward departure, finding Montgomery's case fell "squarely outside of the 'heartland' of typical cases involving a felon in possession of a firearm." (*Id*. at 83.)

Two days later, the Supreme Court decided *Blakely v. Washington*, 542

---

[1] The base offense level was 20. Two levels were added under USSG §2K2.1(b)(1)(A) because the offense involved three to seven firearms, and three levels were subtracted under USSG §3E1.1 for acceptance of responsibility.

U.S. 296 (2004). In light of *Blakely*, Montgomery moved for reconsideration of the district court's decision to grant an upward departure. Upon reconsideration, the district court presciently held *Blakely* applicable to the federal sentencing guidelines. *United States v. Montgomery*, 324 F.Supp.2d 1266, 1269 (D. Utah 2004). Relying on *Blakely* and *Apprendi v. New Jersey,* 530 U.S. 466 (2000), the district court decided to "continue to apply the sentencing guidelines, but without additional fact-finding by the Court that might result in an upward enhancement or departure that would result in a sentence above that which would otherwise apply under the guidelines, absent those findings." *Montgomery,* 324 F.Supp.2d at 1271. Consequently, it vacated the upward departure order, concluding it was a violation of Montgomery's Sixth Amendment rights. *Id*. at 1272-73. The district court sentenced Montgomery to 57 months, the top of the guideline range.

The government appeals from the district court's decision to vacate the upward departure.[2] Exercising jurisdiction under 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291, we REVERSE and REMAND.

**Discussion**

In *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the

---

[2] The government may appeal the district court's imposition of an otherwise final sentence for, *inter alia*, "an incorrect application of the sentencing guidelines." 18 U.S.C.§ 3742(b)(2). However, the government must obtain "the personal approval of . . . the Solicitor General . . . ." *Id*.; see 28 C.F.R. § 0.20(b). The Solicitor General of the United States personally authorized this appeal.

Supreme Court held *Blakely* applied to the sentencing guidelines so that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id*. at 756. As we stated in *United States v. Labastida-Segura*, "[w]ere that the only holding of *Booker*, this appeal would be at an end because it is clear that no Sixth Amendment violation occurred–all operative sentencing facts were admitted." 396 F.3d 1140, 1142 (10th Cir. 2005).

In this case, without the benefit of *Booker*, the district court reasonably anticipated that the remedy to the Sixth Amendment problem would be to remove the offending practice: enhancement of a sentence based on facts not established by a plea of guilty or a jury verdict. *Montgomery*, 324 F.Supp.2d at 1271. Despite the straightforward appeal of this approach, however, the Supreme Court did not adopt it in *Booker*. Rather, "the Supreme Court . . . imposed a global remedy for the Sixth Amendment difficulties with the Sentencing Guidelines, invalidating their mandatory application and instead requiring district courts to consult them in an advisory fashion." *Labastida-Segura*, 396 F.3d at 1142 (citing *Booker*, 125 S. Ct. at 756).

The district court committed non-constitutional *Booker* error in this case by treating the sentencing guidelines, at least in part, as mandatory. *United States v.*

-4-

*Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir.), *cert. denied*, 126 S.Ct. 495 (2005).  Under *Booker*, "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  125 S. Ct. at 767.  The district courts still maintain the ability to depart downward *or upward* from the sentencing guideline range, so long as the sentence imposed is reasonable in light of the factors in 18 U.S.C. § 3553(a).  *Booker*, 125 S. Ct. at 750, 766-67; *United States v. Morales-Chaires*, 430 F.3d 1124, 1128 (10th Cir. 2005); *see also United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005) ("After it has made [the sentencing guidelines] calculation, the district court may impose a more severe or more lenient sentence as long as the sentence is reasonable . . . .").

When non-constitutional *Booker* error is at issue and the appellant raised the issue below,[3] we review whether the error was harmless by a preponderance of the evidence.  *United States v. Glover*, 413 F.3d 1206, 1210 (10th Cir. 2005).  Harmless error is that which "'did not affect the district court's selection of the sentence imposed.'"  *Labastida-Segura*, 396 F.3d at 1143 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).  The burden of proving the error is

---

[3] Because both parties agree the harmless error standard applies, we need not decide whether the government's arguments to the district court about the effect of *Blakely* on the federal sentencing guidelines were sufficient to avoid plain error review.

harmless is on "the beneficiary of the error." *Chapman v. California*, 386 U.S. 18, 24 (1967)*; United States v. Lang*, 405 F.3d 1060, 1065 (10th Cir. 2005).

Ordinarily, we are concerned with whether the error affects the substantial rights of a defendant. *See* FED. R. CRIM. P. 52(a); *United States v. Olano*, 507 U.S. 725, 734 (1993). In this case, however, we are confronted with the question whether the error was harmless to the government—the appellant. *United States v. Davila*, 418 F.3d 906, 909 (8th Cir. 2005); *United States v. Bruce*, 413 F.3d 784, 785 (8th Cir. 2005); *United States v. Barnett*, 410 F.3d 1048, 1052 (8th Cir. 2005). Here, Montgomery has failed to prove the error was harmless. The record clearly indicates the district court would have imposed a higher sentence if it believed it had the discretion to do so. *See Labastida-Segura*, 396 F.3d at 1143 (holding *Booker* error was not harmless where the district court sentenced at the bottom of the range). The initial order granting an upward departure, coupled with the district court's eventual sentence at the top of the guideline range, leads us to conclude the error was not harmless, *i.e.*, the court's non-constitutional *Booker* error did affect its selection of the sentence imposed.

## Conclusion

Because the district court believed it was precluded from departing upward from the guideline range, we REVERSE Montgomery's sentence and REMAND for re-sentencing in light of *Booker*. Montgomery's Motion for Finding of

-6-

Frivolous Appeal and Award Just Damages is DENIED.