FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 20, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DOMINIQUE LARON MORGAN,

    Defendant - Appellant.

No. 21-5053
(D.C. No. 4:20-CR-00132-JFH-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **EBEL**, and **KELLY**, Circuit Judges.[**]
_____

Mr. Morgan pled guilty to coercion and enticement of a minor to engage in

sexual activity, 18 U.S.C. § 2422(b), and possession of a firearm in furtherance of a

drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). He challenges the procedural

reasonableness of his 300-month sentence arguing that the district court relied on

erroneous facts and improperly applied a five-level enhancement under U.S.S.G.

_____

    [*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    [**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

§ 4B1.5(b)(1).  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C.

§ 3742(a), we affirm.

## Background

Mr. Morgan first contacted A.W., a 16-year-old girl, on Facebook on April 10,

2020.  Six days later, A.W. ran away from home and went to live with Mr. Morgan

and his co-defendants.  The next day, Mr. Morgan's co-defendant helped A.W. set up

an account on SkiptheGames.eu advertising A.W. as a prostitute, with nude and

partially nude photos of A.W.  Supp. R. 13–14.  The website allows "customers" to

find prostitutes and includes information about services performed.

Between April 16 and April 20, 2020, A.W. had seven dates.[1]  During her first

date, Mr. Morgan was in another room.  A.W. gave Mr. Morgan the money she

received from that date.  Mr. Morgan provided A.W. marijuana, she remained "on

drugs the whole time," she was with him, and A.W. sold marijuana for Mr. Morgan.

Supp. R. 19.  Mr. Morgan also had unprotected sex with A.W. during this period.

On April 20, 2020, A.W. scheduled a date with Detective Brendan Burke, who

was investigating the case.  With Mr. Morgan in the car, his codefendant drove A.W.

to a hotel for the date.  Supp. R. 17–18.  A.W. did not know if Mr. Morgan stayed in

the parking lot during the date.

During an initial interview in the hotel room, A.W. lied to Officer Burke to

protect Mr. Morgan.  At a later point, A.W. had a forensic interview.  However, when

---

[1]  In this context, a "date" is a meeting between a prostitute and a customer.

2

asked (before a grand jury) about the forensic interview, A.W. noted that the interviewer got several of her life events mixed up.

Several messages between A.W. and Mr. Morgan were also recovered by Officer Burke. At one point, Mr. Morgan messaged A.W.: "We got some mfs coming thru ND you might have to play a role like you Gina's girl or something." Supp. R. 48. Additionally, Mr. Morgan told A.W. that she might have to sleep with them. At another point, A.W. messaged Mr. Morgan that she was trying to get customers, to which he replied, "You will."

Mr. Morgan was indicted on seven counts. Count 3 alleged that Mr. Morgan "knowingly possessed a firearm . . . in furtherance [of] a drug trafficking crime," in violation of 18 U.S.C. § 924(c)(1)(A). Count 5 alleged that Mr. Morgan "knowingly attempt[ed] to persuade, induce, coerce, and entice an individual who had not attained the age of eighteen years to engage in any sexual activity for which any person can be charged with a criminal offense," in violation of 18 U.S.C. § 2422(b). In March 2021, Mr. Morgan pled guilty to Counts 3 and 5. In his guilty plea, Mr. Morgan admitted that "from April 10, 2020 until April 20, 2020, . . . I used a mobile phone and the internet to entice a minor, A.W., to engage in prostitution."

Mr. Morgan made two objections to the PSR. First, he objected to the accuracy of the factual statements in paragraph 12 of the PSR, which read:

> She gave all the money she earned to Morgan. When A.W. was engaged in commercial sex acts, Morgan was either present in a separate bedroom, in a nearby room, or in the parking lot. During this same time period, Morgan engaged in sexual intercourse with A.W. on multiple occasions. Morgan also provided A.W. with marijuana.

3

Mr. Morgan also objected to the application of a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b)(1) because there were not facts sufficient to support the conclusion that there were "multiple occurrences of prohibited sexual conduct."

The district court found "that the information contained in paragraph 12 of the presentence investigation report is supported by the evidence in this case and it is accurately stated." The court also found that A.W.'s grand jury testimony established six or seven occasions where Mr. Morgan enticed A.W. to engage in sexual activity and that this justified the five-level enhancement. The court then calculated an offense level of 35 and a criminal history category of IV. This resulted in a guideline range of 235–293 months for Count 5 and 60 months to run consecutively for Count 3. After reviewing the 18 U.S.C. § 3553(a) factors, the court concluded that a variance was not warranted. Consequently, the court imposed a prison term of 240 months on Count 5 and 60 months on Count 3, to run consecutively, for a total sentence of 300 months' imprisonment. The court also imposed a supervised release term of twenty years.

## Discussion

We review a challenge to the procedural reasonableness of a criminal sentence for an abuse of discretion. United States v. Bellamy, 925 F.3d 1180, 1184–85 (10th Cir. 2019). In assessing how a sentence is calculated, this court reviews factual findings for clear error. Id. at 1185. "A finding is clearly erroneous 'only if [it] is without factual support in the record or if, after reviewing all the evidence, we are

4

left with a definite and firm conviction that a mistake has been made.'" United States v. Shippley, 690 F.3d 1192, 1199 (10th Cir. 2012) (alteration in original) (quoting United States v. Mullins, 613 F.3d 1273, 1292 (10th Cir. 2010)).  On clear error review, this court accepts the district court's reasonable inferences.  United States v. Cash, 733 F.3d 1264, 1273 (10th Cir. 2013).  A district court's credibility determination "that is not contradicted by extrinsic evidence, . . . if not internally inconsistent, can virtually never be clear error."  Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985).

A.     The district court did not clearly err by adopting paragraph 12 of the PSR.

Mr. Morgan challenges the district court's findings that: (1) A.W. gave all the money she earned to Mr. Morgan; and (2) when A.W. was engaged in commercial sex acts, Mr. Morgan was present or nearby.  A.W. testified that after her initial date, she gave all the money to Mr. Morgan.  And Officer Burke testified that based on his interview of A.W., the money A.W. kept was for food or rent, which A.W. testified she paid to Mr. Morgan.  The district court's inference that all the money A.W. earned went to Mr. Morgan was reasonable.  See Cash, 733 F.3d at 1273.

As to the second point, Mr. Morgan argues the evidence only supports one incident "[w]hen A.W. was engaged in commercial sexual acts, [where] Morgan was either present in a separate bedroom, in a nearby room, or in the parking lot."  We disagree.  To be sure, A.W. testified that Mr. Morgan was in the room on her initial date, and that she did not know if Mr. Morgan was outside the hotel during her date with Officer Burke.  But the record fully supports the reasonable inference that Mr.

5

Morgan was nearby during A.W.'s dates. Mr. Morgan exercised significant control over A.W., and A.W. was reliant on Mr. Morgan for transportation. The inference that he was in close proximity to A.W. during A.W.'s dates is not clearly erroneous. See United States v. McClatchey, 316 F.3d 1122, 1129 (10th Cir. 2003).

Regardless, the claimed factual errors are harmless. Harmless error is error "which did not affect the district court's selection of the sentence imposed." United States v. Warren, 22 F.4th 917, 929 (10th Cir. 2022) (quoting United States v. Montgomery, 439 F.3d 1260, 1263 (10th Cir. 2006)). As discussed below, application of U.S.S.G. § 4B1.5(b)(1) requires multiple violations of 18 U.S.C. § 2422(b) or § 1591. Neither Mr. Morgan's location, nor the proportion of A.W.'s earnings that he received, are elements of either statute. See 18 U.S.C. §§ 1591(a)(1), 2422(b).

B.    The district court did not clearly err in applying the five-level enhancement under U.S.S.G. § 4B1.5(b)(1).

Mr. Morgan also challenges the district court's application of a five-level enhancement under U.S.S.G. § 4B1.5(b)(1). Under § 4B1.5(b)(1), Mr. Morgan must have engaged in "prohibited sexual conduct [] on at least two separate occasions." U.S.S.G. § 4B1.5 cmt. n.4(B)(i). Prohibited sexual conduct includes "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)." Id. cmt. n.4(A). This includes offenses under 18 U.S.C. § 2422(b) and § 1591. 18 U.S.C. § 2426(b)(1)(A). Section 2422(b) provides that anyone who uses interstate commerce to persuade, induce, entice, or coerce a minor "to engage in prostitution or any sexual activity for which

6

any person can be charged with a criminal offense." And § 1591(a)(1) provides that "[w]hoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . [who] has not attained the age of 18 years and will be caused to engage in a commercial sex act," is liable.

Mr. Morgan argues that there is insufficient evidence to support that he: (1) "coerced A.W. to perform commercial sex acts on multiple occasions"; and (2) "received a financial benefit from A.W.'s commercial sex acts on multiple occasions." Given the number of dates and how the operation worked, the evidence supports the district court's conclusion that Mr. Morgan, at the very least, enticed A.W. to perform commercial sexual acts on multiple occasions. As it is immaterial whether Mr. Morgan derived a financial benefit from those acts, the court did not erroneously apply the five-level enhancement.

Mr. Morgan pled guilty to one count of violating § 2422(b), but contends that only one violation occurred when he messaged A.W.: "you might have to sleep with them tonight." But this ignores his prediction that she might have to entertain other customers or his assurance that she would successfully attract new customers.

More to the point, Mr. Morgan and his codefendants taught A.W. how to use the website, price dates, and book hotel rooms. Mr. Morgan helped A.W. travel to dates. He gave her marijuana, and A.W. stayed in his apartment. Even if Mr. Morgan's actions were not coercive, he enticed and advertised A.W.'s commercial sexual acts, and he helped transport and house her while she scheduled and attended

7

dates.  The district court's finding that Mr. Morgan violated § 2422(b) multiple times is not clearly erroneous.

Mr. Morgan also argues that although he received payment for A.W.'s first date, there is no evidence that he received subsequent financial benefits.  Even if only part of the money A.W. earned as a prostitute went to Mr. Morgan and his co-defendants to further the enterprise, the district court could reasonably conclude that Mr. Morgan financially benefited from A.W.'s multiple commercial sexual acts.  Regardless, any error on this point was harmless.  See Warren, 22 F.4th at 929.  Neither statute requires the offender to financially benefit from his actions.  See 18 U.S.C. §§ 1591(a)(1), 2422(b).  The district court did not erroneously apply the five-level enhancement.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge