FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WALLACE RAYMOND CROOKS,

Defendant - Appellant.

No. 20-1025

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:00-CR-00439-MSK-6)**

---

John C. Arceci, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him the briefs), Office of the Federal Pubic Defender, Denver, Colorado, for Appellant.

Paul Farley, Assistant United States Attorney (Jason R. Dunn, United States Attorney, with him on the brief), Office of the United States Attorney, Denver, Colorado, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **McHUGH**, and **CARSON**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

Wallace Crooks appeals from the district court's denial of his First Step Act motion for sentence reduction. Because the district court legally erred by finding that Crooks is ineligible for relief and that his designation as a career offender is unreviewable, we reverse and remand.

## I. Background

### A. Crooks's Crime, Trial, and Sentence

Two decades ago, Wallace Crooks was charged with conspiracy to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). He was convicted at a bench trial in which the district court found the government proved beyond a reasonable doubt that Crooks personally possessed with intent to distribute and did distribute 567 grams of crack cocaine.

At the time of Crooks's crime and sentencing, the quantity of crack cocaine he was convicted of conspiring to distribute—50 grams or more—triggered 21 U.S.C. § 841(b)(1)(A)(iii). This enhanced penalty provision subjected Crooks to a mandatory statutory penalty of 10 years to life imprisonment. The Presentence Investigation Report calculated an offense level of 38 based on the quantity of drugs involved in the entire conspiracy, between 1,701 and 2,126 grams, and a criminal history category of VI. The PSR also concluded Crooks qualified as a career offender under § 4B1.1 of the United States Sentencing Guidelines, treating the instant charge for conspiracy as a controlled substance offense. But

this conclusion made no difference in Crooks's guidelines calculation, as his career offender level was lower than his base offense level. The PSR thus calculated Crooks's guidelines range to be 360 months to life imprisonment. Crooks did not object to the PSR. The district court adopted the PSR and its findings— including that Crooks was a career offender under § 4B1.1—and sentenced him to 360 months' imprisonment.

### B. Evolving Crack Cocaine Punishment

The punishment associated with crack cocaine has changed significantly since Crooks's crime and sentencing. Prior to Crooks's crime and sentencing, Congress adopted the Anti-Drug Abuse Act of 1986. This Act established tiers of punishment based on the amount of crack cocaine involved in an offense. For 5 to 49 grams of crack cocaine, the statutory penalty was 5 to 40 years' imprisonment; for 50 grams or more of crack cocaine, the statutory penalty was 10 years to life imprisonment. These punishments were dramatically more severe than punishments for powder cocaine offenses, as each gram of crack cocaine was treated as the equivalent of 100 grams of powder cocaine under the Act.

Congress aimed to address this disparity by enacting the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. It modified 21 U.S.C. § 841(b)(1)(A)(iii) by raising the crack cocaine quantity threshold for the 10 years to life imprisonment statutory penalty from 50 to 280 grams or more of crack

cocaine. It also raised the amount of crack cocaine required to trigger the 5- to 40-year statutory penalty from 5 to 28 grams of crack cocaine. "Although the Fair Sentencing Act was passed to remedy the 100:1 crack-to-powder cocaine sentencing disparity, its provisions applied only to those sentenced after its effective date, leaving those sentenced earlier [like Crooks] with no relief." *United States v. Brown*, 974 F.3d 1137, 1142 (10th Cir. 2020) (citing *Dorsey v. United States*, 567 U.S. 260, 268–69 (2012)).

Congress further responded to the crack/powder cocaine disparity in 2018 with the First Step Act, P.L. 115-391, 132 Stat. 5194, 5222. The Act made the Fair Sentencing Act's 2010 changes to crack cocaine penalties retroactive by allowing prisoners sentenced under the previous laws to personally file motions for sentence reductions.[1]

---

[1] Section 404 of the First Step Act provides:

> a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the

(continued...)

-4-

### C. Crooks's First Step Act Motion

Crooks filed a motion for sentence reduction under the First Step Act in 2019. He requested a reduction of his 360-month sentence to time-served, which at the time was about 260 months. In support, Crooks argued that he was eligible for First Step Act relief per § 404(a) because his offense of conviction, 21 U.S.C. § 841(b)(1)(A)(iii), was modified by the Fair Sentencing Act. He then asked the district court to correctly calculate his guidelines range without the career offender enhancement because a federal drug conspiracy is not a "controlled substance offense" under the career offender guideline. *See* USSG § 4B1.1(a)

---

[1](...continued)

> Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404.

(2001).  By Crooks's calculation, his proper offense level of 32[2] and criminal

history category of VI rendered a guidelines range of 210 to 262 months'

imprisonment.  Finally, Crooks urged the district court to consider the 18 U.S.C.

§ 3553(a) sentencing factors—namely, the lower rates of recidivism for offenders

in their fifties and sixties, as well as his good conduct in prison, which in his

view, supported a sentence reduction.

The district court denied Crooks's motion.  It found that Crooks was

ineligible for a sentence reduction, and even if he were eligible, a sentence

reduction was not warranted due to his designation as a career offender.  The

district court reasoned that Crooks's career offender status was unreviewable

under the First Step Act.  So, even if the Fair Sentencing Act had been in effect at

the time of the offense, Crooks's guidelines range would have been the same as it

was in 2002: 360 months to life imprisonment.

## II.  Analysis

Crooks contends the district court erred in determining both that he was

ineligible for a sentence reduction and that even if he were eligible, he should not

receive one because the district court could not review Crooks's career offender

designation.  Because we agree with Crooks that he is eligible for a sentence

---

[2]  This was based on the application of 21 U.S.C. § 841(b)(1)(B) instead of § 841(b)(1)(A) and without an enhancement to 37 due to career offender status.

-6-

reduction and that his career offender status is reviewable, we reverse and remand.

### A. *Eligibility*

During the appeal, the government changed its position and now concedes Crooks is eligible for First Step Act relief. Crooks is eligible if he was convicted of a "covered offense" under § 404(a).[3] The First Step Act defines "covered offense" as:

> a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, . . . that was committed before August 3, 2010.

§ 404(a).[4]

The meaning of "covered offense" turns on what "the statutory penalties for which" modifies: "a violation," "a Federal criminal statute," or "a violation of a Federal criminal statute."

We conclude that interpreting "the statutory penalties for which" to modify "a violation of a Federal criminal statute" is the approach most consistent with the text and structure of the First Step Act. As an initial matter, we start with the text. Recall, the First Step Act defines "covered offense" as "a violation of a Federal

---

[3] Section 404(c) contains other eligibility restrictions, but none apply here.

[4] The Fair Sentencing Act modified 21 U.S.C. § 841(b)(1)(A)(iii) to raise the drug quantity threshold for the 10 years to life imprisonment statutory penalty from 50 to 280 grams of crack cocaine.

criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act[.]" § 404(a). Some courts have severed the first clause by concluding that "the statutory penalties for which" modifies "a Federal criminal statute" based on the nearest-reasonable-referent canon of statutory construction. This canon "presumes that a modifier refers to the nearest reasonable referent." *USAA Cas. Ins. Co. v. Calderon*, 818 F. App'x 828, 831 (10th Cir. 2020) (unpublished) (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 152 (2012)). As applied here, the modifier—"the statutory penalties for which"—is nearer to *"a* Federal criminal statute" than it is to "a violation." *See United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020). Although this reasoning reaches the same outcome as our reasoning, it is nevertheless flawed.

The clause "a violation of a Federal criminal statute" is a "concise and integrated clause" that "refers to a single thing—a type of violation." *United States v. Jones*, 962 F.3d 1290, 1299 (11th Cir. 2020); *see also Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018) (explaining "the most natural way to view the [relevant] modifier is as applying it to the entire preceding clause . . . because that clause hangs together as a unified whole, referring to a single thing").

This interpretation is further supported by an analysis of the final clause of § 404(a). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing

Act of 2010, . . . *that was committed before August 3, 2010.*" First Step Act § 404(a) (emphasis added). A defendant cannot "commit" "a Federal criminal statute"—but he can "commit" "a *violation* of a Federal criminal statute." *See Jones*, 962 F.3d at 1299.

Every circuit court of appeals to have considered this issue has reached the same conclusion: that eligibility depends on a defendant's offense of conviction, not his underlying conduct. *See United States v. Smith*, 954 F.3d 446 (1st Cir. 2020); *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019); *United States v. Jackson*, 945 F.3d 315 (5th Cir. 2019); *United States v. Beamus*, 943 F.3d 789 (6th Cir. 2019); *Shaw*, 957 F.3d at 734; *United States v. McDonald*, 944 F.3d 769 (8th Cir. 2019); *Jones*, 962 F.3d at 1290. But most of these courts have taken a different route than we adopt here. They did so by determining that "the statutory penalties for which" modifies "a Federal criminal statute" rather than the entire preceding clause. That approach, however, improperly broadens the definition of "covered offense" because it "would mean that the First Step Act covers offenses unaffected by the Fair Sentencing Act." *Jones*, 962 F.3d at 1300. As the Eleventh Circuit Court of Appeals explained in *Jones*, that

> alternative interpretation would mean that a movant with any drug-trafficking offense—even, say, a heroin offense—would have a "covered offense" because the movant violated section 841 and the Fair Sentencing Act modified some of the penalties that apply to section 841,

even though the Act did not alter the penalties for heroin offenses.

*Id.* Now, even if a heroin defendant moved for First Step Act relief and could get past § 404(a), his motion would be dead in the water once the district court reached § 404(b), because applying the Fair Sentencing Act as if it were in effect at the time the offense was committed would do nothing.[5] But although these differing interpretations reach the same outcome—crack-cocaine defendants are the only defendants convicted of 21 U.S.C. § 841 who have a real chance at a First Step Act sentence reduction—as a matter of statutory interpretation, we adopt the approach that is consistent with the statutory text and structure.

We accordingly hold that a defendant's federal offense of conviction, not his underlying conduct, determines First Step Act eligibility.[6] Crooks was convicted of conspiracy to distribute 50 grams or more of crack cocaine. When he committed the offense, the statutory penalty for his crime was 10 years to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2000). The Fair Sentencing Act increased the threshold quantity of crack cocaine required to trigger § 841(b)(1)(A)(iii) from 50 to 280 grams or more. Because Crooks's offense of conviction triggered a statutory penalty that has since

---

[5] Section 404(b) of the First Step Act provides: "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed."

[6] Of course, a defendant must also meet the other requirements of § 404(c).

been modified by the Fair Sentencing Act, he committed a "covered offense" and is eligible for resentencing under the First Step Act, despite his responsibility for 567 grams of crack cocaine.

### B. Career Offender Status

Because the district court ruled in the alternative by assuming eligibility, we must next address Crooks's career offender status. The district court held that even if Crooks were eligible for First Step Act relief, it would decline to reduce his sentence because it could not review Crooks's career offender designation. "Whether a defendant was erroneously classified as a career offender is a question of law subject to de novo review." *United States v. Karam*, 496 F.3d 1157, 1166 (10th Cir. 2007) (internal quotation marks omitted).

Congress granted courts nearly unfettered discretion to reduce, or to decline to reduce, an eligible defendant's sentence pursuant to a First Step Act motion. But, notwithstanding this discretion, to "impose a reduced sentence as if . . . the Fair Sentencing Act . . . were in effect at the time the covered offense was committed" necessarily requires a correct calculation of the guidelines range. *See Brown*, 974 F.3d at 1145 ("If the district court erred in the first Guideline calculation, it is not obligated to err again.").

The district court should have recalculated the guidelines range. In denying Crooks's motion, the district court concluded that if the Fair Sentencing Act had been in

effect at the time of Crooks's offense conduct, his guidelines range would have been identical to the range calculated at his initial sentencing. The district court reached this conclusion because it determined Crooks's designation as a career offender was unreviewable.

Not only is a career offender designation reviewable in a First Step Act motion, but this designation was incorrectly applied to Crooks at his initial sentencing in 2002 and led the sentencing court to incorrectly calculate his guidelines range. In *Brown*,[7] we held that a defendant may challenge the legality of his career offender status in a First Step Act motion because an improper designation as a career offender can lead to a miscalculation of the guidelines range, which "affects the legitimacy of the process because the benchmark for the entire sentencing process rests on an obviously mistaken premise." 974 F.3d at 1139–40, 1144 (internal quotations omitted). Although we recognized that the First Step Act "is narrow and does not authorize plenary resentencing," we also explained that "[the Act] allows a district court to at least consider [a defendant's] claim that sentencing him as a career offender would be error given subsequent decisional law that clarifies (not amends) the related career offender provision at issue." *Id*. at 1139. The district court thus misunderstood the scope of its authority by concluding Crooks's career offender status was unreviewable.[8]

---

[7] *Brown* was decided after the district court issued its order here.

[8] After our decision in *Brown*, the government concedes that a district

(continued...)

-12-

The government concedes on appeal that Crooks was improperly designated as a career offender because his drug conspiracy conviction of 21 U.S.C. § 846 is not a "controlled substance offense" within the meaning of the career offender guideline. We agree.

Defendants classified as career offenders under USSG § 4B1.1 (2001)[9] are subject to minimum offense levels dependent upon their offense's statutory maximum penalty. Section 4B1.1 explains that one of the requirements to be designated as a career offender is that "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense[.]" The application notes to § 4B1.2 explain that "controlled substance offense" "include[s] the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." § 4B1.2, comment (n.1) (emphasis added). But the 2001 guidelines do not define "conspiring."

We addressed the interplay of an identical application note and 21 U.S.C. § 846 in *United States v. Martinez-Cruz*, 836 F.3d 1305 (10th Cir. 2016). In *Martinez-Cruz*, the defendant's sentencing offense level was enhanced based on USSG § 2L1.2 application note 5 for his prior drug conspiracy conviction of 21 U.S.C. § 846. *Id*. at 1307. At the

<hr />

[8](...continued)
court may reconsider career offender status in ruling on a First Step Act motion.

[9] The 2001 version of the Guidelines is relevant to our analysis because it was used at Crooks's initial sentencing. *See Brown*, 974 F.3d at 1144 ("[T]he First Step Act . . . does not empower the sentencing court to rely on revised Guidelines instead of the Guidelines used at the original sentencing.").

-13-

time, application note 5 stated that "[p]rior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." (emphasis added). But the application notes to § 2L1.2 did not define "conspiring," so we had to decide whether the defendant's prior conspiracy conviction was a conspiracy triggering a sentencing enhancement under application note 5. *Id*. at 1310.

We held that it was not. Because "conspiring" was not defined by § 2L1.2 or its application notes, we applied the categorical approach to such a "generic, undefined term[] in the Guidelines." *Id*. at 1313. After doing so, we "conclude[d] that the generic definition of 'conspiracy' requires an overt act." *Id*. at 1314. And because the defendant's prior conspiracy conviction of 21 U.S.C. § 846 did not require proof of an overt act, it was "a categorical mismatch for the generic definition of 'conspiracy' in U.S.S.G. § 2L1.2 application note 5[.]" *Id*.

This reasoning applies with equal force to Crooks's designation as a career offender. Section 4B1.2 application note 1 uses identical language to define "controlled substance offense," explaining that it "include[s] the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." *See* USSG § 4B1.2, comment (n.1) (emphasis added). Just as "conspiring" in § 2L1.2 application note 5 refers to the generic definition of conspiracy, which requires an overt act, so too does "conspiring" in § 4B1.2 application note 1. *See Martinez-Cruz*, 836 F.3d at 1314. And because Crooks's

conspiracy conviction, 21 U.S.C. § 846, does not require an overt act, he does not satisfy the career offender requirements of § 4B1.1. *See United States v. Shabani*, 513 U.S. 10, 17 (1994) ("[P]roof of an overt act is not required to establish a violation of 21 U.S.C. § 846.").

As a result, Crooks was erroneously designated as a career offender.

\* \* \*

On remand, the district court should recalculate Crooks's guidelines range using the 2001 edition, *see Brown*, 974 F.3d at 1144, and without the career offender guidelines enhancement. It then may consider the 18 U.S.C. § 3553(a) factors. *See United States v. Mannie*, 971 F.3d 1145, 1158 n.18 (10th Cir. 2020).

## III. Conclusion

For the reasons set forth above, we **REVERSE** the district court's order denying Crooks's First Step Act motion and **REMAND** for proceedings consistent with this opinion.[10]

_____

[10] Crooks requests that we reassign this case to a new judge on remand, arguing that the district court judge used a disparaging metaphor in her order denying a sentence reduction by likening defendants like Crooks seeking First Step Act relief to trapped rats seeking an exit from electrified cages. The use of this metaphor may have been insensitive, but it is not grounds for reassignment. *See Mitchell v. Maynard*, 80 F.3d 1433, 1450 (10th Cir. 1996). There is no evidence or allegation that the court is biased against Crooks. Moreover, we do not believe reassignment would preserve the appearance of justice. And although reassignment would not entail much waste or duplication, reassignment is only appropriate under extreme circumstances that are not present here. *See, e.g.*, *id*.