FILED
United States Court of Appeals
Tenth Circuit

March 30, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TONY LAMAR BURRIS,

    Defendant - Appellant.

No. 19-6122

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:03-CR-00213-R-1)**
_____

Susan M. Otto, Federal Public Defender (Laura K. Deskin, Research & Writing Specialist, Oklahoma City, Oklahoma, with her on the briefs), Oklahoma City, Oklahoma, for Defendant – Appellant.

Steven W. Creager, Assistant United States Attorney (Robert J. Troester, Acting United States Attorney, with him on the briefs), Office of the United States Attorney, Western District of Oklahoma, Oklahoma City, Oklahoma, for Plaintiff – Appellee.
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

In 2004, Tony Burris pleaded guilty to possession with intent to distribute crack cocaine, and the district court sentenced him to 262 months in prison, the low end of his sentencing range under the United States Sentencing Guidelines (the

Guidelines). After Congress passed the Fair Sentencing Act of 2010, which addressed sentencing disparities between crack and powder cocaine, and made those changes retroactive in the First Step Act of 2018, Burris moved for a reduced sentence. *See* Pub. L. No. 111-220, 124 Stat. 2372 (2010); Pub. L. No. 115-391, 132 Stat. 5194 (2018). The government opposed the motion, arguing that Burris's Guidelines range remained the same because the calculation should be based on the larger quantity of crack cocaine attributed to Burris in the Presentence Investigation Report (PSR) rather than the smaller amount charged in the indictment. Recognizing that the parties raised an issue that had not yet been addressed by this court, the district court declined to resolve it, instead exercising its discretion to deny relief regardless of the correct Guidelines calculation. Because we hold that the district court was obligated to calculate Burris's revised Guidelines range before exercising its discretion to deny relief and that the error was not harmless, we reverse and remand for further proceedings consistent with this opinion.

## Background

A federal grand jury indicted Burris for his role in a drug-distribution conspiracy. Burris pleaded guilty to possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). The PSR stated that Burris was the supply source for multiple drug transactions involving his coconspirators and determined that Burris was accountable for 567 grams of crack cocaine. Because Burris had been convicted of three prior felonies involving drug distribution, the PSR determined that Burris was a career offender under

2

U.S.S.G. § 4B1.1, which provides an alternate method for calculating the offense level based on the statutory maximum sentence for the offense. Burris's conviction carried a statutory mandatory minimum sentence of ten years and a maximum of life; therefore, the PSR calculated that Burris's base offense level was 37. After subtracting three levels for acceptance of responsibility, Burris's total offense level was 34. Given this offense level and Burris's criminal-history category of VI, the PSR determined that his Guidelines range was 262–327 months. The district court sentenced Burris to 262 months.

While Burris was serving his sentence, Congress passed the Fair Sentencing Act of 2010, which, in relevant part, increased the quantity of crack cocaine required to trigger the 10 years-to-life mandatory minimum and maximum sentences under § 841(b)(1)(A) from 50 grams to 280 grams. *See* § 2(a)(1), 124 Stat. at 2372. Although the Fair Sentencing Act was not retroactive, Congress later made it so when it passed the First Step Act of 2018, which provides that a district court may impose a reduced sentence as though the relevant portions of the Fair Sentencing Act were in effect at the time of the offense was committed. § 404(b), 132 Stat. at 5222.

Following these changes to the legal landscape, the Probation Office filed a report advising the district court that Burris appeared eligible for a reduced sentence. According to the report, the Fair Sentencing Act decreased Burris's statutory minimum and maximum sentences, which in turn decreased his offense level and his resulting Guidelines range, reducing it from 262–327 months to 188–235 months.

Burris subsequently filed a motion under 18 U.S.C. § 3582(c)(1)(B) and § 404(b) of the First Step Act requesting a sentence reduction. He argued that the amount of crack cocaine referenced in his offense of conviction—50 grams—should form the basis of the revised Guidelines calculation. He therefore agreed with the Probation Office's report that his revised Guidelines range was 188–235 months and requested a sentence at the low end of that range. The government opposed the motion, disputing Burris's eligibility for a reduced sentence and alternatively arguing that Burris's Guidelines range had not changed because the PSR attributed more than the threshold quantity of 280 grams of crack cocaine to Burris.

Although the district court determined that Burris was eligible for a sentence reduction, it declined to grant relief. According to the district court, the parties' arguments presented "myriad legal issues district courts have yet to address or about which they disagree." R. vol. 1, 162. The district court decided, however, that it "need not resolve these issues" because the First Step Act grants courts discretion to grant or deny relief. *Id.* Thus, the district court declined to calculate Burris's Guidelines range, stating that "[G]uidelines recalculations, whatever their result, are simply one factor in the [c]ourt's consideration—and not a controlling one at that." *Id.* at 163. The district court then turned to the 18 U.S.C. § 3553(a) sentencing factors and concluded that Burris's original 262-month sentence remained appropriate given the severity of his conduct, the need to deter criminal behavior, and Burris's criminal history.

Burris appeals.

4

**Analysis**

## I.    Guidelines Calculation

Burris argues that the district court erred when it declined to calculate his

revised Guidelines range prior to exercising its discretion to deny relief. We review a

district court's disposition of a First Step Act motion for abuse of discretion.[1] *United*

*States v. Mannie*, 971 F.3d 1145, 1155 (10th Cir. 2020). "A district court abuses its

discretion when it relies on an incorrect conclusion of law or a clearly erroneous

finding of fact." *United States v. Piper*, 839 F.3d 1261, 1265 (10th Cir. 2016)

(quoting *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013)). "We review

matters of statutory interpretation, as well as the scope of a district court's authority

to reduce a sentence, de novo." *United States v. Broadway*, 1 F.4th 1206, 1211 (10th

Cir. 2021).

Since the district court's ruling, we have largely resolved the underlying

issues. As the government acknowledges, its original position is no longer viable

because we have determined that both a defendant's eligibility for First Step Act

---

[1] The government contends that we should review only for plain error because
Burris failed to argue below that the district court was obligated to calculate his new
Guidelines range before deciding whether to reduce his sentence. The government
acknowledges that Burris had no opportunity to object in person because the district
court declined Burris's request for a hearing, but it nevertheless asserts that Burris
should have filed a motion for reconsideration to preserve the issue he raises in this
appeal. We recently concluded (over the government's argument to the contrary) that
a motion for reconsideration can be filed in a § 3582 proceeding. *See United States v.*
*Warren*, 22 F.4th 917, 922, 926 (10th Cir. 2022). But *Warren* did not hold that a
motion for reconsideration must be filed to preserve an argument for appellate
review. And the authorities the government cites do not state otherwise. We therefore
reject the government's argument for plain-error review.

relief and the calculation of a defendant's revised Guidelines range turn on the offense of conviction. *United States v. Crooks*, 997 F.3d 1273, 1278 (10th Cir. 2021) (holding that eligibility for relief under First Step Act turns on "defendant's federal offense of conviction, not his [or her] underlying conduct"); *Broadway*, 1 F.4th at 1213–14 (holding that "district court should look to the minimum drug quantity associated with an eligible defendant's offense of conviction, rather than his underlying conduct" when conducting revised Guidelines calculation).

And critically, as Burris highlights, our decisions have also discussed a district court's obligation to calculate the revised Guidelines range *prior to* deciding, in its discretion, whether to reduce a defendant's sentence. In *United States v. Brown*, we noted that although the First Step Act does not authorize plenary resentencing, effecting the changes contemplated by the First Step Act nevertheless requires a district court to "calculate the defendant's Guideline[s] range." 974 F.3d 1137, 1144 (10th Cir. 2020). We stressed that a correct Guidelines calculation is the "starting point" to any sentencing proceeding and "paramount" when sentencing under the First Step Act. *See id.* at 1144–45. Likewise, in *Crooks*, we recognized that the plain language of the First Step Act directs courts to "'impose a reduced sentence as if . . . the Fair Sentencing Act . . . were in effect at the time the covered offense was committed,'" a statutory mandate that "*necessarily* requires a correct calculation of the [G]uidelines range." 997 F.3d at 1278 (emphasis added) (quoting *Brown*, 974 F.3d at 1145). We therefore determined that "[t]he district court should have recalculated the [G]uidelines range" and instructed the district court on remand to

6

calculate the defendant's revised Guidelines range *before* considering the § 3553(a) factors. *Id.* at 1278, 1280. And in *Broadway*, we reiterated that the district court should "determine whether the Fair Sentencing Act would have affected [the defendant's] sentence had it been in effect at the time of the defendant's crime" and then "[*a*]*fter* the district court does so, it may exercise its discretion to determine whether to reduce a sentence, which may include consideration of the § 3553(a) sentencing factors and the defendant's underlying conduct." 1 F.4th at 1213–14 (emphasis added).

As our recent decisions illustrate, a district court is obligated under the First Step Act to correctly calculate the defendant's revised Guidelines range prior to exercising its discretion to grant or deny relief. Several of our sibling circuits agree. *See United States v. Blake*, 22 F.4th 637, 641 (7th Cir. 2022) (per curiam) ("Although courts are never obligated to grant [First Step Act] motions, their discretion 'must be informed by a calculation of the new sentencing parameters' and an accurate comparison between the original and new options." (quoting *United States v. Corner*, 967 F.3d 662, 665 (7th Cir. 2020))); *United States v. Collington*, 995 F.3d 347, 355 (4th Cir. 2021) (explaining that "district courts must accurately recalculate the Guidelines sentenc[ing] range" when addressing First Step Act motions); *United States v. Boulding*, 960 F.3d 774, 784–85 (6th Cir. 2020) (concluding that First Step Act "at a minimum" requires "accurate calculation of the amended [G]uidelines range at the time of resentencing"); *United States v. Murphy*, 998 F.3d 549, 560 (3d Cir.

2021) (finding that district court must make "accurate calculation" of revised Guidelines range in First Step Act proceedings).

Resisting this conclusion, the government argues that our instruction in *Brown* to begin with the correct Guidelines calculation conflicts with—and is accordingly negated by—our earlier decision in *Mannie*. *See Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996) (instructing court facing intra-circuit conflict to follow earlier precedent). In so arguing, the government relies on the portion of *Mannie* in which we addressed the defendant's argument that we should review a decision under the First Step Act "for an abuse of *sentencing* discretion, utilizing the two-step approach" set forth in *Gall v. United States*, 552 U.S. 38 (2007). *Id.* at 1154–55 (citing *Gall* for proposition that appellate review of criminal defendant's sentence has two steps, procedural error and substantive reasonableness). We rejected this argument in *Mannie*, because we reasoned that defendants who bring First Step Act motions have already "had the opportunity to challenge the district court's sentencing decisions on direct appeal." *Id.* at 1155. Thus, we concluded, "upon review of a sentence-modification proceeding, this court reviews not the propriety of the sentence itself, but the propriety of the district court's grant or denial of the motion to reduce the sentence." *Id.*

The government seizes on our rejection of the defendant's argument that *Gall*'s two-step process should apply when we review First Step Act motions, insisting that it conflicts with *Brown*'s direction that a district court confronting a First Step Act motion must first calculate a defendant's correct Guidelines range. But

8

the government reads too much into this discussion. *Gall*'s two-step process involves more than ensuring that the Guidelines were correctly calculated—indeed, the second step of that process includes a review for substantive reasonableness of the sentence as a whole, which has little to do with the underlying Guidelines calculations. *See Gall*, 552 U.S. at 51. So our rejection of that two-step process for First Step Act motions does not carry an implicit rejection of the notion that a district court faced with a First Step Act motion must first calculate a defendant's correct Guidelines range. Simply put, we did not hold in *Mannie* that district courts are free to eschew the Guidelines calculation in the First Step Act context. We merely found that our review under the First Step Act is limited to the district court's disposition of the First Step Act motion. *See Mannie*, 971 F.3d at 1155. Thus, we see no conflict between this discussion in *Mannie* and our instruction in *Brown* that a district court must begin with the correct Guidelines calculation.

As further evidence of conflict, the government highlights *Mannie*'s comment that the district court is not required to examine the § 3553(a) factors when deciding a First Step Act motion. *See* 971 F.3d at 1158 n.18. According to the government, *Mannie*'s comment conflicts with *Brown*'s instruction to calculate the correct Guidelines range because one of the § 3553(a) factors is the Guidelines range itself. *See* § 3553(a)(4). But again, the government reads too much into *Mannie*. Although the Guidelines range is one of seven factors listed in § 3553(a), it is far more than that. A defendant's Guidelines range is "the starting point and the initial benchmark" of sentencing, and "a district court should begin all sentencing proceedings by

9

correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49; *see also Brown*, 974 F.3d at 1144–45 (explaining that Guidelines range is "starting point of any sentencing" and is of "paramount" importance). We therefore see no inconsistency between *Brown*'s direction that a district court ruling on a First Step Act motion "must calculate the defendant's Guideline[s] range," 974 F.3d at 1144, and *Mannie*'s accompanying instruction that the district court is "not required" to consider the six other § 3553(a) factors when exercising its discretion, *see* 971 F.3d at 1158 n.18. Thus, we reject the government's argument that *Mannie* conflicts with *Brown*.[2]

Next, in a letter of supplemental authority, the government contends that our recent decision in *Warren* supports its position that the district court did not err by "declining to decide the appropriate Guidelines range." Aplee. Rule 28(j) Letter, Jan. 7, 2022. *Warren* involved, in part, the defendant's argument (advanced for the first time in a motion for reconsideration) that the sentencing court had improperly designated him as a career offender, thus inflating his Guidelines range. 22 F.4th at 921. But rather than definitively deciding the career-offender question, the district court assumed that the defendant was not a career offender and proceeded to deny relief on other grounds. *Id.* at 929–30. The defendant argued on appeal that the "district court was required to conduct an independent sentencing analysis anchored

---

[2] The government alternatively proposes a solution to read *Mannie* and *Brown* harmoniously. Because we are unpersuaded that *Mannie* and *Brown* conflict, we do not reach the government's alternative argument.

in his proffered Guidelines range—without the career[-]offender designation." *Id.* at 929. Under these facts, we found no error, reasoning that "[a]lthough the district court did not explicitly grapple with the precise Guidelines range proffered by [the defendant], it implicitly accepted that Guidelines range by performing its analysis based on the assumption the career[-]offender classification did not apply." *Id.* at 929–30. We also distinguished these facts from the facts in *Crooks*, explaining that there, by contrast, "the district court *refused to consider* the career offender issue entirely." *Id.* at 930 (emphasis added).

Contrary to the government's argument, this case is more like *Crooks* than *Warren*. Here, unlike in *Warren*, the district court did not assume that Burris's proffered revised Guidelines range was correct. *See* 22 F.4th at 929–30. Instead, as in *Crooks*, the district *did not calculate* Burris's revised Guidelines range. *See* 997 F.3d at 1278. We also observe that the procedural posture in *Warren* was different—there, the defendant raised his Guidelines argument for the first time in a motion for reconsideration. *See* 22 F.4th at 921. Thus, the government's reliance on *Warren* is misplaced.

In sum, although we recognize that the district court lacked the benefit of our subsequent decisions, we conclude that it erred by failing to calculate Burris's correct Guidelines range prior to exercising its discretion. *See Pelt v. Utah*, 539 F.3d 1271, 1282 (10th Cir. 2008) ("Where a change of law occurs while a case is on appeal, we apply the law in effect at the time of our decision.").

**II.    Harmless Error**

The government argues that even if the district court erred, any error was harmless. In the sentencing context, an error is harmless if it "did not affect the district court's selection of the sentence imposed." *United States v. Montgomery*, 439 F.3d 1260, 1263 (10th Cir. 2006) (quoting *United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005)). As the beneficiary of the error, the government bears the burden of proving harmlessness by a preponderance of the evidence. *United States v. Sanchez-Leon*, 764 F.3d 1248, 1262–63 (10th Cir. 2014).

We have not directly addressed whether failing to calculate the Guidelines range when ruling on a First Step Act motion is harmless error, but we are persuaded by the Seventh Circuit's reasoning in a factually similar case. In *Blake*, like here, the district court "sidestepped the parties' dispute about the quantity of drugs attributable to [the defendant] for sentencing purposes and thus never calculated the retroactively lowered range under the [Guidelines]." 22 F.4th at 639. Then, like here, the district court "proceeded directly to assessing whether, as a matter of its discretion, [the defendant] deserved a reduced sentence." *Id.* at 640. The Seventh Circuit found error, as we have, explaining that when faced with a difficult Guidelines calculation, courts cannot bypass the calculation and proceed directly to the § 3553(a) factors. *See id.* at 642. It further concluded that the very nature of this error "preclude[d] a finding of harmlessness," reasoning that "district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* at 642 (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)). By failing to

calculate the Guidelines range, the Seventh Circuit noted, the district court's "exercise of discretion was untethered from the 'benchmark' of the new sentencing framework." *Id.* (quoting *Corner*, 967 F.3d at 666).

Yet here, the government contends that any error was harmless because the district court "looked at both proposed [G]uidelines ranges and concluded that it would deny the motion under either [G]uidelines range." Aplee. Br. 11. True, the district court stated it would deny relief "whatever the[] result" of the correct Guidelines calculation. R. vol. 1, 1663. But "[o]ur court has rejected the notion that district courts can insulate sentencing decisions from review by making such statements." *United States v. Gieswein*, 887 F.3d 1054, 1062–63 (10th Cir. 2018). For example, we have found a district court's alternative holding that "the same sentence would be imposed even if the advisory [Guidelines] range was determined to be improperly calculated" insufficient to establish that a procedural error in calculating a defendant's Guidelines range was harmless. *United States v. Peña-Hermosillo*, 522 F.3d 1108, 1117 (10th Cir. 2008) (quoting R. 70). We explained that "it is hard . . . to imagine a case where it would be procedurally reasonable for a district court to announce that the same sentence would apply even if correct [G]uidelines calculations are so substantially different, without cogent explanation." *Id.*; *see also Gieswein*, 887 F.3d at 1062 (giving "little weight to the district court's statement that its conclusion would be the same 'even if all of the defendant's objections to the presentence report had been successful'").

At the same time, procedural error can be harmless in certain "exceptional

13

instances." *Gieswein*, 887 F.3d at 1061. *Gieswein* was one such "rare" case because the district court had offered a "thorough" and "cogent" explanation for the imposed sentence. *Id.* at 1061, 1063. In finding that particular error harmless, though, we made it clear that "in the vast majority of cases," a district court's pronouncement that the same sentence would apply even if the Guidelines calculation was substantially different would not be procedurally reasonable. *See id.* at 1063.

Here, we agree with the Seventh Circuit that the district court's error, by its very nature, was not harmless; the district court's exercise of discretion was untethered from the correct calculation of Burris's revised Guidelines range. *See Blake*, 22 F.4th at 642–43. Moreover, the district court's reasoning that it would deny relief regardless of the correct Guidelines calculation does not overcome this conclusion. The district court's explanation that Burris's original sentence was appropriate under the § 3553(a) factors was cursory, especially given the extent of the variance between the original and new Guidelines range. *See Peña-Hermosillo*, 522 F.3d at 1117. Based on this record, we are not persuaded that the district court's failure to calculate Burris's correct Guidelines range did not affect its decision to deny relief. *See Montgomery*, 439 F.3d at 1263. Thus, we hold that the government has not met its burden to prove harmlessness.

## Conclusion

Under the First Step Act, a district court must begin with a correct calculation of the revised Guidelines range prior to deciding, in its discretion, whether to reduce a defendant's sentence. The district court erred by failing do so here. Further, we are

not persuaded, on this record, that the error was harmless. We therefore reverse the district court's order denying Burris's First Step Act motion and remand for further proceedings consistent with this opinion.